ORIGINAL

FILED

02/22/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: AF 09-0688

IN THE SUPREME COURT OF THE STATE OF MONTANA

AF 09-0688

FILED

FEB 2 2 2022

Bowen Greenwood
Clerk of Supreme Court
State of Montana

IN RE THE RULES OF PROFESSIONAL
CONDUCT

O R D E R

This Court has received a request from the Montana Legal Services Association (MLSA) to consider an exception to M. R. Pro. Cond. 1.8(e) that would allow non-profit legal assistance organizations to provide humanitarian aid to low-income Montanans at risk of housing instability, homelessness, and eviction. MLSA, which operates the Montana Eviction Intervention Program under a contract with the Montana Department of Commerce to assist clients facing eviction, seeks to expand the program to include direct administration of rental assistance funds as authorized by U.S. Treasury Regulations and to establish an eviction diversion program working with the Montana Court system.

IT IS HEREBY ORDERED that the Clerk of this Court file MLSA's letter of request in this Court's above-referenced public docket for matters concerning the Rules of Professional Conduct.

IT IS FURTHER ORDERED that the Court will consider MLSA's request at its next scheduled public meeting on March 8, 2022, at 1:00 p.m.

The Clerk is directed to provide copies of this Order to MLSA, to the State Bar of Montana, and to the Chair of the State Bar's Ethics Committee, Peter F. Habein.

DATED this 22nd day of February, 2022.

For the Court,

Chief Justice

# Montana Legal Services Association

*Provide, protect and enhance access to justice.*

February 15, 2022

Hon. Mike McGrath, Chief Justice
Hon. James Jeremiah Shea
Hon. Laurie McKinnon
Hon. Beth Baker
Hon. Dirk Sandefur
Hon. James A. Rice
Hon. Ingrid Gustafson
Montana Supreme Court
P.O. Box 203001
Helena, MT 59620-3001

> **Re:** **Request for approval to allow non-profit legal assistance organizations to provide humanitarian aid to low-income Montanans**

Dear Chief Justice McGrath and Justices:

We are writing to request your consideration of an exception to Montana Rule of Professional Conduct 1.8 (e) that would allow non-profit legal assistance organizations to provide humanitarian aid to low income Montanans at risk of housing instability, homelessness and eviction.

<u>The Situation</u>:
The Montana Legal Services Association ("MLSA") has entered into a Contract with the Montana Department of Commerce to continue and expand the Montana Eviction Intervention Program ("MEIP"). Starting in October of 2020 through August 1 of 2021, Montana Legal Services Association ("MLSA") partnered with the state Department of Commerce to successfully provide legal advice and counsel to over 349 clients facing eviction in Montana through the Montana Eviction Intervention Program (MEIP). This benefited 349 households and a total of 849 Montanans. Due to the success of the program and a large increase in anticipated evictions, MLSA and the Department of Commerce have entered into a contract with the Department to expand the program, to better meet the needs of clients, courts, and landlords in Montana.

MLSA will continue MEIP to provide services including: intake and case handling services for tenants facing eviction; contracting with private attorneys to provide advice and full representation for clients; and, advice and representation provided by MLSA attorneys. MLSA would like to expand these services to include direct administration of rental assistance funds as authorized by U.S. Treasury Regulations, and the establishment of an eviction diversion program working with the Montana Court system.

**Eviction Diversion Program**: MLSA has been in contact with the Montana Supreme Court Administrator's office and a number of judges of limited jurisdiction courts regarding the

establishment of an eviction diversion program. These stakeholders are supportive of the establishment of the program and have agreed to work with MLSA to ensure that this new portion of the program is designed to serve renters, landlords, and courts as best as possible. Under the program, courts would refer eviction cases upon filing to MLSA for assignment of counsel for tenants and/or a mediator for the parties. This will enable MLSA staff to reach out and work with clients immediately, initiate eviction diversion, disperse funds to landlords, and keep Montanans housed. It also will assist with the backlog of court cases caused by the continuing pandemic. Courts will be asked to promote and refer renters and landlords to this program as a means to expedite services and settle issues outside of court, which is advantageous to both parties. MLSA is currently working to put together a detailed plan for how this would operate to discuss with the Courts.

**Rental Assistance**: The Department of Commerce is also going to contract with MLSA to directly administer rental assistance funding for cases facing eviction in court. This will help expedite rental assistance funding to landlords. Right now, this funding can take several months to reach the intended parties. Eligibility determination will be done by MLSA staff using financial eligibility criteria established by the Department of Commerce under the federal Treasury Regulations governing the program. MLSA is uniquely positioned to administer these funds because MLSA is already screening clients for eligibility for its own federal funding. MLSA is working with the Department of Commerce to develop a program that does not duplicate current services, and assists with getting rental assistance funds to eligible parties as expeditiously as possible. Significantly, the financial assistance component of our program will have the important added community benefit of financially helping landlords, who like our client population, have also suffered greatly as a result of the pandemic.

The Department of Commerce established the Emergency Rental Assistance Program (ERAP) to support Montanans who have experienced financial hardships directly or indirectly due to the COVID-19 pandemic and are at risk of housing instability. ERAP is funded through the federal Consolidated Appropriations Act (ERA1) and the American Rescue Plan Act (ERA2), as appropriated to the Montana Housing division of the Department of Commerce by the 67th Montana Legislature via HB 3, HB 630, and HB 632. A series of FAQs issued by the U.S. Department of the Treasury provide guidance regarding the program.[1] There are strict guidelines regarding who is eligible to receive funding, what expenses qualify for assistance payments, and

---

[1] See https://home.treasury.gov/policy-issues/coronavirus/assistance-for-state-local-and-tribal-governments/emergency-rental-assistance-program/faqs and https://housing.mt.gov/Rental-Housing/Montana-Emergency-Rental-Assistance-Program. In Treasury FAQ 36, the Treasury Department strongly encourages grantees of ARPA funds to take steps to prevent evictions for nonpayment of rent. Recommended steps include
(1) providing information to judges, magistrates, court clerks, and other relevant court officials about the availability of assistance under ERA programs and housing stability services; (2) working with eviction courts to provide information about assistance under ERA programs to tenants and landlords as early in the adjudication process as possible; and (3) engaging providers of legal services and other housing stability services to assist households against which an eviction action for nonpayment of rent has been filed.

how eligibility is documented. Funding will only be disbursed in support of households that meet these requirements.

The Challenge:

Montana Rule of Professional Conduct 1.8(e) bars a lawyer from providing "financial assistance to a client in connection with pending or contemplated litigation." Under an exception set out in subsection 1.8(e)(2), a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client. It may be argued that the provision of rental assistance to persons facing housing security and possible eviction would constitute litigation expenses under Rule 1.8(e)(2). However, the scope of the exception has not been defined by the Court.[2] Without further guidance from this court, any lawyer who provides services for clients who have received financial assistance through this program risks being found to have violated MRPC 1.8.

The rationale for the general rule against lawyers providing financial assistance to clients is based on the common-law prohibitions against champerty and maintenance. See, Utah State Bar Ethics Advisory Opinion 11-02, ¶ 6, citing Geoffrey Hazard and W. William Hodes, *The Law of Lawyering* § 12.2 (3rd ed., 2011). "Champerty was prohibited to prevent attorneys from stirring up litigation or from becoming involved in a lawsuit solely for personal economic benefit." *Green v. Gremaux*, 285 Mont. 31, 38, 945 P.2d 903, 907 (1997). The common law prohibition of champerty is codified at § 37-61-408, MCA. This section "is designed to prevent attorneys from bringing or becoming involved in litigation for their personal economic benefit." *Gremaux*, 285 Mont. at 39, 945 P.2d at 908.

These concerns are explained in Comment 10 to Rule 1.8 of the Model Rules:

> Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation.

Model Rules of Professional Conduct, R. 1.8, comment 10 (2020).

The program, as described above, will not stir up litigation. The cases already exist. The coronavirus pandemic has created a crisis of economic and housing insecurity for low-income Montanans. MLSA's lawyers will not have a financial stake in the outcome of a case, nor will any lawyer become involved for personal economic benefit. The lawyers' independent judgement will not be impacted by the provision of financial assistance. A lawyer will not face the conflicting roles of lawyer and creditor.

The Request:

---

[2] Rule 1.8 was amended by the Court to its current form in 1996. In re Rule 1.8, 1996 Mont. LEXIS 150, 53 Mont. St. Rep. 707.

The Court has a constitutional mandate to fashion and interpret the Rules of Professional Conduct. Mont. Const. art. VII, sect. 2, cl. 3; *In re Rules of Prof'l Conduct*, 2000 MT 110, ¶ 9, 299 Mont. 321, 2 P.3d 806.

MLSA requests that the Court consider entering a special Order interpreting Rule 1.8(e) to clarify that when a non-profit organization providing free legal aid to indigent clients has received donations or other funding to provide humanitarian aid to persons in need, such as financial assistance to pay for housing, food, clothing, shelter or transportation, the organization's use of such donations or other funding to provide humanitarian aid to its clients or the clients' families shall not be deemed a violation of Rule 1.8(e).[3]

Thank you for your consideration of this request. We are available in the event you have questions.

Sincerely,

Alison L. Paul
Executive Director
Montana Legal Services Association

William F. Hooks
Director of Advocacy
Montana Legal Services Association

Cc: Beth McLaughlin, Supreme Court Administrator

---

[3] Such orders have been issued by the Tennessee Supreme Court, In re Tenn. Sup. Ct. R. 8, RPC 1.8(e), Humanitarian Aid Provided by Non-Profit Legal Assistance Orgs., 2021 Tenn. LEXIS 73 and the Massachusetts Supreme Judicial Court, https://www.mass.gov/doc/order-concerning-humanitarian-aid-by-non-profit-organizations-and-mass-r-prof-c-18e/download (June 10, 2020).